FILED
2011 Jul-06  PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| CLYDE and TERESA DRIVER, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | 7:11-CV-1374-LSC |
| | ] | |
| W.E. PEGUES, INC., ROBERT | ] | |
| GREGORY PEGUES, WILLIAM | ] | |
| EDWARD PEGUES, III, and | ] | |
| SAMMY LANSDELL, | ] | |
| | ] | |
| Defendants. | ] | |

## MEMORANDUM OF OPINION

I.    Introduction.

Pending is Defendants' motion to dismiss Plaintiffs' ("the Drivers")

claims against them. (Doc. 6.) Defendants claim that the law provides no

redress for grandparents who have witnessed their dead grandson disinterred

and taken away.

Plaintiffs originally filed suit claiming three underlying causes of

action: Count One, wanton interference with a grave; Count Two, negligent

interference with a grave; and Count Three, intentional or reckless infliction

of emotional distress (outrage). Plaintiffs also claim two derivative causes,

Count Four, negligent supervision and Count Five, civil conspiracy.

Defendants now move to dismiss the complaint because the Drivers do not

have standing to pursue the underlying claims and because the underlying

claims do not provide the Drivers with a cause of action. (Doc. 6 at 8, 11;

Doc. 11 at 1.) Defendants also offer a lack of personal jurisdiction under

Federal Rule of Civil Procedure ("FRCP") 12(b)(1) as a basis for dismissing

the individual defendants, Robert Pegues and William Pegues, (Doc. 6 at

11.) Even though Defendants contend that their motion "warrants the

dismissal of all claims," they make no argument regarding either of the

derivative causes, Counts IV and V. The Court will not thus address those

counts. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th

Cir. 1995) (stating that "the onus is upon the parties to formulate

arguments"). The issues raised in Defendants' motion are now ripe for

decision.  After considering the presented legal arguments and evidence,

the motion is due to be granted in part.

II.     Facts and Procedural History.[1]

Dillon Godsey lived less than three months. His relatives—including his paternal grandparents, Plaintiffs Clyde and Teresa Driver—buried him in Webb Cemetery, Lamar County, Alabama, in 2008. After Dillon's death his parents, Britt Godsey and Kim Neal, divorced. Neal then moved to Mississippi, near her own mother and Dillon's maternal grandmother, Becky Neal.

Sometime during 2009, Becky or Kim Neal approached the Defendants about moving Dillon's body. Individual defendants William and Robert Pegues were officers and employees of W.E. Pegues, Inc., ("the Funeral Home") an entity that operates a funeral home in Tupelo, Mississippi and employs Defendant Lansdell. Defendants suggested that the Neals use the funeral home in Lamar County, Alabama, that had handled the burial. But the Neals told the Funeral Home that the Drivers had a friendly relationship with the Lamar County funeral home. The Neals and Drivers did not get along. Indeed, the Neals told the Funeral Home that Clyde Driver would

---

[1]Unless otherwise indicated, the facts are taken from Plaintiffs' complaint. (Doc. 1.)

shoot them.

The Funeral Home agreed to disinter Dillon's body and move it to Mississippi. It did not alert the Drivers of, or get their consent to, the planned disinterment. In November 2009, the Funeral Home filed a Funeral Director's Request with the Lamar County Health Department in order to disinter Dillon. The Funeral Home workers then proceeded to the grave site.

That same day, the Drivers were driving near the Webb Cemetery when they noticed a Chevrolet Suburban and a backhoe parked near Dillon's grave. They inspected, discovering Lansdell apparently digging up Dillon's casket. When confronted by the Drivers, Lansdell told them that he had a court order. The Drivers demanded to see it. Lansdell did not produce it and, instead, jumped into the Suburban and fled the scene—with the casket, which he had already loaded into the SUV. The Drivers could not catch him.

According to the complaint's allegations, Defendants then attempted to hide Dillon's location from the Drivers. First, they planned to disinter Becky Neal's husband and bury Dillon underneath him in Eupora, Mississippi. But Becky Neal feared the Drivers might have followed Lansdell and thus might discover that plan. So the Funeral Home buried Dillon in a mausoleum

near Tupelo, a place providing surveillance cameras to prevent Dillon's removal.

Dillon's father, Britt, brought suit and settled his claims with Defendants. Britt's parents, the Drivers, filed the present action in April 2011.

III.    Standard of Review.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).  "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  *St. George v. Pinellas Cnty*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007).[2]     But the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted).  The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570.  Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v.*

---

[2]In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63.  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

*Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty.*, *Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).   And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*. (quoting *Iqbal*, 129 S. Ct. at 1951-52). However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must

determine if the allegations provide for relief on any possible theory."

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364 (11th Cir.

1997).

IV.    Analysis.

Defendants argue that the tort of outrage and all torts related to

interference with a grave site require a plaintiff to be the next of kin. They

also argue that the Court lacks personal jurisdiction over the individual

defendants.

A.    Interference with a Grave Site.

Alabama law provides redress for interference with a buried body,

whether grounded in trespass or non-trespass tort. *See Jeff. Cnty. Burial*

*Soc. v. Scott,* 118 So. 644, 645 (1928). But Alabama law limits this redress

to "the nearest relation" who "may maintain an action for unwarranted

interference with the burial of the body." *Id.* In short, "the rule applicable

to parties plaintiff in a case of this kind [is]: In the event of damage to the

grave of a deceased person, the right of action, if any, accrues first to the

surviving spouse" and then, "[i]f there is no surviving spouse, the right is in

the next of kin in the order of their relation to the deceased." *Hogan v.*

*Woodward Iron Co.*, 83 So. 2d 248, 249 (Ala. 1955) (citations omitted).

The Drivers bring this action for the reckless or negligent removal of their grandson's body. They both seek "emotional harm and mental anguish." (Doc. 1 at 12.) But they do not allege that they hold legal title to their grandson's remains or former resting place. And baby Dillon's parents are both alive.

His parents, not the Drivers, are his next of kin. His father has in fact already prosecuted "these same claims." (Doc. 6 at 11.) "[I]t is inconceivable that each member of the family could maintain a separate action to recover for mental pain and anguish." *Hogan*, 83 So. 2d at 249 (Ala. 1955) (citations omitted) (holding that a daughter could not recover damages for interference with her father's burial site when her father's spouse remained alive). Because the Drivers are not their grandson's next of kin, they may not recover for anguish associated with any unwanted interference with their grandson's body.

B.     Outrage.

A cause of action arises for "intentional or reckless" conduct that is "extreme and outrageous" and that causes "emotional distress so severe

that no reasonable person could be expected to endure it" *Thomas v. BSE*

*Indus. Contractors, Inc.,*  624 So. 2d 1041, 1043 (Ala. 1993). In practice,

Alabama courts limit this cause of action—known as outrage—but do allow

it in cases involving "wrongful conduct in the context of family burials."

*Horne v. TGM Associates, L.P.,* 56 So. 3d 615, 631 (Ala. 2010). Alabama

courts allow outrage in this context because their "decisions lay much stress

upon the sacredness of the resting ground of the dead." *Whitt v. Hulsey*,

519 So. 2d 901, 906 (Ala. 1987) (quoting *Holder v. Elmwood Corp.*, 165 So.

235, 237 (1936).

Here, the Drivers have alleged a plausible claim of outrage. The

Drivers saw someone "digging up" their grandson. (Doc. 1 at 6.) They did not

know the person. When the Drivers tried to find out what the person was

doing, he "fled at high speed in his vehicle, taking the vault, casket and

body of Dillon B. Godsey - which had already been excavated and placed

within the Suburban." (Doc. 1 at 6.) They did not know where the man took

their grandson. Later, they found out that the Funeral Home employed the

man. And then, they found out that their grandson had been laid again to

rest. The Drivers have plausibly alleged the requisite extreme and

outrageous conduct.

Extreme conduct aside, the complaint also reveals that Defendants acted recklessly in bringing about Grandfather Driver's depression along with Grandmother Driver's stress, emergency room visit, treatment by ventilator and instance of passing out.  Defendants did not alert the Drivers that they intended to disinter their grandson. Defendant Lansdell fled the scene without telling the Drivers where he planned to take their grandchild. Defendants originally planned to bury Dillon beneath another casket, then changed their mind, moving the body to a mausoleum and placing it under surveillance, all while refusing to tell the Drivers where they had taken Dillon.  The Drivers have plausibly alleged reckless conduct and severe emotional distress.

Defendants nonetheless allege that only the next of kin have standing or can state a claim for outrage. But the case law does not limit outrage to family scenarios involving next of kin. Alabama law recognizes outrage in the context of family burials for more than just the next of kin. *See Whitt*, 519 So. 2d at 906 (finding outrage in "the desecration and destruction of a portion of a family burial ground" without inquiring into whether the

multiple plaintiffs were next of kin). The Drivers, in sum, have alleged a

plausible claim of outrage.

> C.     Personal Jurisdiction Over Individuals.

Defendants allege that the Court does not have personal jurisdiction

over Robert and William Pegues, individuals who reside in Mississippi. In

particular, these defendants contend that they have neither the systematic

contacts necessary for general jurisdiction nor the purposeful availment

necessary for specific jurisdiction.

A court determines as a matter of law whether it has personal

jurisdiction over a defendant. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d

1286, 1291 (11th Cir. 2000).  To establish a prima facie case of personal

jurisdiction over a non-resident, a plaintiff must present "enough evidence

to withstand a motion for a directed verdict." *Consol. Dev. Corp.*, 216 F.3d

at 1291.  The burden then shifts to the non-resident defendant to make its

own prima facie case that personal jurisdiction is inapplicable. *Future Tech.*

*Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If

the defendant meets its burden, the burden finally shifts back to the

plaintiff to "to substantiate the jurisdictional allegations in the complaint

by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id*. at 1249. In short, the plaintiff "bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

Determining whether personal jurisdiction over a non-resident defendant exists depends on the plaintiff satisfying a two-prong test.  *See, e.g., Madara v. Hall*, 916 F.2d 1510, 1515-16 (11th Cir. 1990).  A court must first look to the Alabama long-arm statute and determine if it provides a basis for jurisdiction  *Id*.  The second prong requires a court to "decide whether the exercise of personal jurisdiction . . . would offend" due process concerns.  *Id*. (citations omitted)

Alabama's long-arm statute permits the exercise of jurisdiction over non-residents to the "fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."  *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000). Because the due process guarantees of the Alabama Constitution are coextensive with that of the Constitution of the United States, this Court turns to test whether the requirements for personal jurisdiction under the

Due Process Clause of the Fourteenth Amendment have been satisfied. *See*

*Ex parte Georgia Farm Bureau Mut. Auto. Ins. Co.*, 889 So. 2d 545, 550 (Ala.

2004).

"Considerations of due process require that a non-resident defendant

have certain minimum contacts with the forum, so that the exercise of

jurisdiction does not offend traditional notions of fair play and substantial

justice." *Consol. Dev. Corp.*, 216 F.3d at 1291. The sufficiency of the

defendants' contacts with the forum state depends on the quantity and

quality of those contacts, as well as the type of personal jurisdiction being

asserted: specific or general. *Id.* In this case, the Drivers contend that all

Defendants directed their activities at Alabama residents, allowing the Court

to exercise "specific personal jurisdiction." (Doc. 10 at 10.)

"Specific jurisdiction arises out of a party's activities in the forum that

are *related to the cause of action alleged in the complaint.*" *Consol. Dev.*

*Corp.*, 216 F.3d at 1291. (citations omitted) (emphasis added). Such

"minimum contacts" are sufficient only where it is shown the defendant

"purposefully avail[ed] itself of the privilege of conducting activities within

the forum State, thus invoking the benefits and protections of its laws." *Id.*

(quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).   The minimum contacts requirement is grounded in fairness and "assures that the defendant's conduct and connection with the forum State is such that he should reasonably anticipate being haled into court there."   *Id*. Furthermore, the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted).

Here, the Drivers fail to carry their ultimate burden of establishing that this Court has specific personal jurisdiction over Robert and William Pegues. William and Robert Pegues were individual officers of the Defendant W.E. Pegues, Inc., during the pertinent events.   "[J]urisdiction over individual officers or employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself." *Frye v. Smith*, No. 1091386, 2011 WL 118260, at *11 (Ala. Jan. 14, 2011). Rather, the Drivers must show "that the individual officers engaged in some activity that would subject them to" personal jurisdiction. *Id*. The Drivers do not.

In their complaint, the Drivers allege that "defendants combined and concurred" to disinter Dillon Godsey, which required that agents of W.E. Pegues, Inc., go to Alabama. (Doc. 1 at 4.) But the Drivers do not point to individual conduct by Robert and William Pegues. They do allege that Sammy Lansdell, a W.E. Pegues, Inc., employee, traveled to Alabama. The Drivers do not allege, however, that Robert and William Pegues traveled to Alabama.

In the motion to dismiss, Defendants attach affidavits from Robert and William Pegues. (Doc. 6-2.) Neither Robert nor William has held employment in Alabama, owned real estate in Alabama, or resided in Alabama. (Doc 6-2 at 3-5.) Rebutting the Drivers' claims of specific jurisdiction for this particular matter, neither Robert nor William has advertised for W.E. Pegues, Inc., in Alabama, has been to the cemetery in Lamar County that once held Dillon Godsey, was present at Dillon's disinterment, or has had contact with the Drivers regarding their allegations. (Doc. 6-2 at 2-5.)

Faced with "the ultimate burden of establishing that personal jurisdiction is present," the Drivers provide nothing to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent

proof" and "merely reiterate the factual allegations in the complaint." *Oldfield*, 558 F.3d at 1217; *Future Tech. Today, Inc.*, 218 F.3d at 1249. That complaint generally alleges that "defendants combined and concurred" rather than showing that Robert and William Pegues individually "engaged in some activity that would subject them" to personal jurisdiction. (Doc. 1 at 4.) *Frye v. Smith*, 2011 WL 118260, at \*11. In sum, the Drivers' complaint does not allege sufficient facts for the Court to exercise personal jurisdiction over the individual defendants, Robert and William Pegues.

V.     Conclusion.

For the reasons stated above, the motion to dismiss (Doc. 6) is GRANTED for all Defendants on Counts One and Two of the Drivers' complaint. The motion to dismiss is GRANTED for Robert and William Pegues on all Counts. The motion to dismiss is DENIED for Defendants W.E. Pegues, Inc., and Sammy Lansdell on Counts Three, Four, and Five.  A separate order conforming with this opinion will be entered.

Done this 6th day of July 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

159890